# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-675V

| | |
|---|---|
| CAROL EATON,<br><br>   Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>   Respondent. | Chief Special Master Corcoran<br><br>Filed: July 28, 2025 |

*Johnathan Joseph Svitak, Shannon Law Group, PC, Woodbridge, IL, for Petitioner.*

*Catherine Elizabeth Stolar, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT[1]

On January 12, 2021, Carol Eaton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of an influenza ("flu") vaccine received on November 18, 2020, she suffered a right shoulder injury related to vaccine administration ("SIRVA") as defined on the Vaccine Injury Table ("Table"). Petition (ECF No. 1) at ¶¶ 1, 12. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

Petitioner has provided preponderant evidence that she suffered the residual effects or complications of her injury for more than six months after vaccination. Petitioner

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

has also established all other requirements for a Table SIRVA. Accordingly, she is entitled to compensation (and Respondent's motion to dismiss the Petition on the basis of severity is **denied**).

I.      Procedural History

Petitioner filed this action less than two months after receiving the flu vaccine alleged to have caused her injury. She was therefore incapable, at the outset of this matter, to establish the six months of sequelae "severity requirement." Instead, Petitioner speculated that her right shoulder injury "*will require treatment* for a period of at least six months." *Id.* at ¶ 12. (emphasis added).

On December 23, 2021, Petitioner filed a Statement of Completion. ECF No. 17. On May 18, 2022, the case was assigned to SPU. ECF No. 18. However, at an initial status conference held on November 2, 2022, Respondent's counsel pointed out that a number of medical records were missing. *See* ECF No. 21. Respondent's counsel had also undertaken a preliminary examination of the records that had been filed and noted that Petitioner might be unable to satisfy the six-month severity requirement. *Id.* In response to Respondent's concerns, I ordered Petitioner to file all outstanding medical records by January 3, 2023. *Id.* Petitioner requested two extensions to this deadline and filed additional records and another Statement of Completion on March 10, 2023.

Respondent filed a Rule 4(c) Report on June 29, 2023, stating his position that the case should be dismissed for failure to demonstrate entitlement to compensation. ECF No. 28 (Rule 4(c) Report) at 1, 9. Respondent also filed a separate motion to dismiss, referencing the Rule 4(c) Report, on June 29, 2023. ECF No. 29. In the Rule 4(c) Report, Respondent opposed the Table SIRVA claim on the ground that Petitioner had failed to satisfy the statutory severity requirement. Rule 4(c) Report at 7-9.[3] Respondent emphasized that Petitioner complained of right shoulder symptoms and obtained treatment, including physical therapy ("PT"), for about three months after vaccination, but then discontinued PT and did not mention her shoulder to any other treater until January 11, 2023, nearly two years later. *Id.* at 7.

On August 23, 2023, I entered a scheduling order setting deadlines for briefing and for Petitioner to file any additional evidence. ECF No. 30. Petitioner filed a motion for a ruling on the record on October 24, 2023. ECF No. 33 (Pet'r Mot.). On December 8, 2023, Respondent filed a combined reply in support of his motion to dismiss and response to Petitioner's motion. ECF No. 34 (Resp't Opp'n). On December 22, 2023, Petitioner filed

---

[3] Respondent recognized that Petitioner satisfied the Qualifications and Aids to Interpretation for a Table SIRVA claim. Rule 4(c) Report at 7.

reply in support of her motion for a ruling on the record. ECF No. 35 (Pet'r Reply). This matter is ripe for adjudication.

## II.     Relevant Evidence

I have reviewed all of the evidence filed to date. I will only summarize or discuss evidence that directly pertains to the determinations herein, as informed by the parties' respective citations to the record and their arguments.

### A.     Petitioner's Pre-Vaccination Medical Status

Petitioner was seventy-three years old at the time of vaccination and was a retired Licensed Practical Nurse. Ex. 7 at 250, 256. Petitioner had no history of right shoulder pain or injury. The earliest medical record submitted by Petitioner, from December 2017, documented a lumbar fusion surgery, including synovial cyst removal and disk stabilization, to treat a "long history of back as well as leg pain." Ex. 2 at 1409, 1428-1430.

A large number of Petitioner's medical records address her chronic kidney disease and related history of kidney stones. Petitioner saw a urologist and a nephrologist for these conditions, and her kidney function was regularly monitored by her primary care physician ("PCP"), Dr. William Rosen. *See id.* at 574, 914, 1170; Ex. 7 at 423, 505. In March 2020, Petitioner had a right ureteroscopy with laser lithotripsy, ureteral stent, and cystoscopy. *Id.* at 551, 556. However, Petitioner continued to have kidney and urological issues, particularly severe right hydronephrosis, hydroureter, and a loss of right kidney function. Ex. 2 at 208, 427; Ex. 7 at 423. On October 26, 2020, Petitioner underwent another right ureteroscopy and cystoscopy with balloon dilation of a right ureteral stricture, extraction of ureteral calculi, and ureteral stent. Ex. 2 at 232-33.

Petitioner also had a history of hypertension, hyperlipidemia, and hypercholesterolemia and saw a cardiologist in August 2019 for tachycardia and dizziness. *Id.* at 569-70; Ex. 7 at 251-53. Additionally, Petitioner had a history of right hip pain due to degenerative changes. Ex. 2 at 1202, 1224.

### B.     Petitioner's Initial Post-Vaccination Right Shoulder Treatment

On November 18, 2020, Petitioner received a flu vaccine in her right arm at Dr. Rosen's office. Ex. 7 at 251-53. The purpose of this appointment was for follow-up on Petitioner's chronic conditions. *Id.* On December 14, 2020, Petitioner contacted Dr. Rosen regarding shoulder pain. Ex. 2 at 106. One of Dr. Rosen's staff recorded that,

> [o]n 11/18/202[0] Pt. got her flu shot. Her arm was so sore & was told to ice it. 3 hours after she got shot she said her arm was killing her & now she still can't move her arm. She is having a hard time putting her clothes on, it is that bad. Is there anything that can be done for her. Could she be referred to a specialist?

*Id.* Dr. Rosen instructed his staff to schedule Petitioner for an appointment. *Id.*

On December 18, 2020, Petitioner saw Dr. Rosen for this right shoulder pain. Ex. 7 at 177. Petitioner complained right arm pain and stiffness that was worse in the morning since receiving the flu vaccine. *Id.* Dr. Rosen stated that Petitioner's pain "centered in shoulder area" and that she had trouble elevating her right shoulder. *Id.* Dr. Rosen diagnosed Petitioner with an "adverse reaction to influenza vaccine." *Id.* Petitioner was prescribed prednisone, referred to an orthopedic/sports medicine doctor, and told to come back for a follow-up in one month. *Id.* at 178.

Petitioner saw orthopedist Dr. Steven Weissfeld for her right shoulder pain on January 13, 2021. Ex. 4 at 277. Petitioner rated her pain level as a 5/10 at best and 9/10 at worst. *Id.* Petitioner told Dr. Weissfeld that "about 3 hours after the injection, she developed severe pain in the lateral deltoid area and deep within the subacromial space" and that the pain had persisted since that time. *Id.* Petitioner reported that the prednisone helped "a little." *Id.* Dr. Weissfeld performed an x-ray and diagnosed Petitioner with bursitis of right shoulder, tendinitis of right rotator cuff, and an adverse reaction to the flu vaccine. *Id.* at 279-80. At this appointment, Dr. Weissfeld administered a steroid injection in her right shoulder. *Id.* at 275-76, 279. Dr. Weissfeld also referred Petitioner to PT, encouraged her to move her shoulder, and planned for a follow-up in 6-8 weeks after starting PT. *Id.* at 280.

On January 20, 2021, Petitioner returned to Dr. Rosen about her chronic conditions. Ex. 7 at 92. Petitioner mentioned a decreased range of motion in her right shoulder with some pain but noted improvement after the steroid injection. *Id.*

On January 28, 2021, Petitioner had a PT evaluation. Ex. 2 at 2142. Petitioner reported that her pain started in the evening after she received the flu vaccination. *Id.* The physical therapist assessed Petitioner as having a "fair" rehabilitation potential due to the "severity of impairment." *Id.* at 2147. Petitioner was noted to be "apprehensive of movement in general" and had some fatigue after only a small number of repetitions, indicating a need to improve endurance. The PT plan was for Petitioner to attend one to two times a week for seven to eight weeks. *Id.* at 2148. Petitioner's insurance approved up to 24 visits. *See id.*

Petitioner canceled her next PT appointment, which had been set for February 18, 2021, due to weather. Ex. 2 at 2141. Petitioner did attend her third appointment on February 22, 2021. *Id.* at 2138. At this appointment Petitioner described her pain as a 4/10 at best and 6/10 at worst. *Id.* Petitioner was noted to have pain with active elevation but no pain with passive rotations. After this appointment, on February 25, 2021, Petitioner cancelled all remining physical therapy appointments "due to high co-pay." *Id.* at 2136.

### C.  Petitioner's Other Medical Treatment Post-Vaccination

There is a subsequent five-month gap in treatment. On July 21, 2021, Petitioner had an appointment with Dr. Rosen. Ex. 5 at 24. This visit appears to have been for bloodwork and for treatment of right hip pain. *See id.*; Ex. 7 at 4. Petitioner received an x-ray of her right hip, which showed no fracture but only mild to moderate arthritis. *Id.* at 7. Shoulder pain is not mentioned in this record.

On August 26, 2021, Petitioner had an appointment with orthopedic surgeon Dr. William Wester for right hip pain. Ex. 4 at 239. Petitioner reported that she had had trouble with her right hip for several years but that it had gotten much worse over the past year. *Id.* She also reported having difficulty climbing stairs and that she required a cane. *Id.* Dr. Wester determined that Petitioner was a candidate for arthroplasty. *Id.* at 240. There is no indication that Petitioner complained of right shoulder pain to Dr. Wester. *See id.*

On November 5, 2021, Petitioner met with Dr. Trevor Conner for pain in her left index finger. *Id.* at 163. Petitioner described a blister that had popped on her finger joint and notable swelling, warmth, and pain in that spot. *Id.* Dr. Conner ordered lab work and an MRI. *Id.* It does not appear that Petitioner mentioned right shoulder pain at this appointment. Petitioner had a second appointment with Dr. Conner in regard to her left index finger on December 7, 2021.[4] *Id.* at 73. There was also no mention of any shoulder pain at this visit. *Id.* at 73-74.

Petitioner underwent a right hip replacement with Dr. Wester on January 10, 2022. *Id.* at 39. On January 25, 2022, Petitioner saw Dr. Wester for a post-operative follow-up

---

[4] The record from the December 7, 2021 appointment with Dr. Connor stated that Petitioner underwent an incision and drainage of her left index finger joint on November 19, 2021 and was diagnosed with a mucus cyst, although "an obvious cyst was not found." Ex. 4 at 73. Petitioner did not file any records related to this November 19, 2021 procedure.

5

appointment.[5] *Id.* Petitioner had another post-operative follow-up with Dr. Wester on February 22, 2022. *Id.* at 4. These records do not mention any shoulder complaints.

On April 1, 2022, Petitioner had an appointment with Dr. Rosen and received flu, COVID-19, and respiratory syncytial virus tests. Ex. 5 at 12-15. Petitioner also had appointments with Dr. Rosen on May 18, 2022 and September 28, 2022 where it appears that she had bloodwork done. *See id.* at 4-10. There is no indication that Petitioner complained of any issue with her right shoulder at this time.

### D.   Petitioner's Resumption of Right Shoulder Treatment

After nearly two years since her last appointment, Petitioner returned to Dr. Weissfeld on January 11, 2023, for an "orthopedic re-evaluation RIGHT SHOULDER PAIN of uncertain etiology." Ex. 6 at 4. Dr. Weissfeld wrote,

> I have seen her once in the clinic before, this being January 13, 2021. Diagnosis at that time was right shoulder bursitis and rotator cuff tendonitis. She states that she got very good relief of pain initially although the pain never completely was gone. She states that she had month or two of excellent relief then gradual return of symptoms. She says she has had significant worsening of pain over the last 1-2 months. No history of new trauma. Of note, chart review indicates that she had [total hip arthroplasty] done by Dr. Wester in early January 2022. Her current right shoulder pain is located primarily in the subacromial/subdeltoid bursa region and is exacerbated by most range of motion. No history of recent trauma.

*Id.*

Dr. Weissfeld reviewed Petitioner's x-rays from January 13, 2021 and administered a steroid injection for her right shoulder. *Id.* at 5-6. Dr. Weissfeld also noted that an 80 mg injection would hopefully provide a longer period of relief than the previous 40 mg injection. *Id.* at 6. Dr. Weissfeld stated that he would consider reinjecting her shoulder if it gave her four to six months of relief, but would have to see if there were other treatment options if she only had a brief period of relief. *Id.* However, Petitioner declined to add PT to her treatment plan due to the cost. *Id.*

---

[5] The record from the January 25, 2022 appointment with Dr. Wester stated that Petitioner had a right total hip arthroplasty two weeks earlier. *Id.* at 39. Petitioner did not file any records for the operation itself.

### E. Declaration Evidence

On December 9, 2021 -- after she had discontinued PT in February 2021, but over a year before she returned to Dr. Weissfeld in January 2023 -- Petitioner executed a declaration in support of her claim.[6] Ex. 3. Petitioner explained the onset of pain and decreased mobility in her right shoulder as occurring approximately three hours after injection. *Id.* at 2. Petitioner then described her appointments with Dr. Rosen, Dr. Weissfeld, and the physical therapist through February 25, 2021. *Id.* at 1-2.

With regard to severity, Petitioner asserted that "[s]ince being discharged from [PT], my right shoulder continues to be painful and I continue to have decreased mobility and strength." *Id.* at 2. Petitioner further stated that her right shoulder injury made it difficult to perform daily activities, that she continued to have limited mobility in her right shoulder, that the pain was constant and burning, that at times she experienced a stabbing pain with movement, and that her sleep was regularly disrupted by the pain. *Id.* Petitioner concluded that her injury "caused [her] pain and impairment for a period lasting longer than six months." *Id.* at 3.

## III. Analysis

### A. Six-Month Severity Legal Standard

To receive compensation under the Vaccine Program, a petitioner must prove either (1) that he suffered an injury falling within the Vaccine Injury Table, or (2) that he suffered an injury that was actually caused by his vaccine. *See* Sections 13(a)(1)(A) and 11(c)(1). Under either method, however, a petitioner must demonstrate that the injured person has "suffered the residual effects or complications of his illness, disability, injury, or condition for more than six months after the administration of the vaccine."[7] Section 11(c)(1)(D)(i). Cases may appropriately be dismissed for failure to substantiate the severity requirement. *See, e.g.*, *Hinnefeld v. Sec'y of Health & Hum. Servs.*, No. 11-328V, 2012 WL 1608839, at *4–5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's Guillain–Barré Syndrome resolved less than two months after onset).

---

[6] This declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. This declaration was filed on December 23, 2021, although it was executed on December 9, 2021.

[7] Petitioner does not allege, nor would the evidence support, either alternative for establishing the severity requirement: that the alleged injury resulted in death, or "inpatient hospitalization and surgical intervention." Section 11(c)(1)(D)(ii), (iii).

The petitioner carries the burden of establishing the matters required in the petition, including the severity requirement, by a preponderance of the evidence. Section 13(a)(1)(A); *see Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65-66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 2014). Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied,* 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

The Act prohibits finding that a petitioner has met this burden "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." Section 13(a). Medical records must be considered, *see* Section 13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The factual matters required to prove elements of a Vaccine Act claim may be established by a *mix* of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing Section 12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

### B.    Petitioner Has Established Severity With Preponderant Evidence

In order to meet the statutory six-month severity requirement, Petitioner must demonstrate, by a preponderance of the evidence, that she suffered the residual effects or complications of her claimed injury beyond May 18, 2021. Although this is a marginal case, I conclude that the records detailing Petitioner's initial treatment of her right shoulder, in combination with her declaration, fulfill her burden of proof on entitlement. Petitioner's evidence preponderantly demonstrates that she suffered from pain and reduced range of motion through at least six months post-vaccination – although not much beyond, meaning that Petitioner's later treatment cannot be shown to be SIRVA-associated.

Respondent contends that Petitioner only remained symptomatic through her last PT appointment on February 22, 2021. *See* Rule 4(c) Report at 7; Resp't Opp'n at 2. But

8

the record establishes that Petitioner was not discharged from PT because she had recovered, but instead that she chose to prematurely discontinue treatment because she could not afford the co-pays. Ex. 2 at 2136. And it is established in the Vaccine Program that "a discharge from medical care does not necessarily indicate there are no residual effects." *Herren v. Sec'y of Health & Hum. Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014).

On February 22, 2021, the physical therapist recorded Petitioner's complaints of 4/10 pain at rest and 6/10 pain with movement and set several treatment goals, none of which had yet been met. *See id*. at 2138-40. At that point, Petitioner was supposed to complete seven to eight weeks of PT, which may have provided documentation of her symptoms for much more of the six month requirement. *See id.* Unfortunately, she did not have the financial resources to follow through. The physical therapist's plan and assessment that Petitioner's condition warranted lengthier treatment is corroborated by Petitioner's declaration describing how her symptoms continued post-vaccination. Ex. 3 at 1-2.

In light of this evidence, I find it reasonable to infer that Petitioner experienced pain and limited mobility in her right shoulder at least through May 18, 2021. I have previously found that severity was met when a petitioner consistently sought treatment for his shoulder in the immediate months following vaccination, had a continuing plan for additional treatment and follow up, and had not been discharged from treatment, even though he did not actually pursue medical care for the full six months. *See Silvestri v. Sec'y of Health & Hum. Servs.*, No. 19-1045V, 2021 WL 4205313, at *3 (Fed. Cl. Spec. Mstr. Aug. 16, 2021). In *Silvestri*, the petitioner also provided a reasonable explanation – anxiety about receiving steroid injections – as to why he did not seek additional treatment for his injury. *Id.* Further, the *Silvestri* petitioner submitted affidavit evidence that "he continued to experience intermittent pain and weakness in his left arm and shoulder" beyond the six month benchmark. *Id.* Petitioner's situation here is analogous to *Silvestri,* and her financial concerns are a similar understandable rationale for not pursuing treatment.[8]

---

[8] In *Purtill*, I also found it more likely than not that the petitioner had suffered the residual effects of her injury for at least six months. *See* No. 18-0832V, 2019 WL 7212162, at *6 (Fed. Cl. Spec. Mstr. Nov. 12, 2019). The *Purtill* petitioner reported to her doctor that her pain was gone except when donning her shirt and that *most* of her pain had been erased by a steroid taper. *Id.* (emphasis in original). She explained that she did not return for further shoulder treatment because she believed that nothing further could be done and her doctor was reluctant to prescribe more steroids or refer her to an orthopedist. *Id.* Similarly, in *Schafer*, Special Master Dorsey found it unlikely that the petitioner's symptoms would have resolved within six months based on the description of his condition at his last PT session, his affidavit, and his explanation that he discontinued PT because he believed that Medicaid limited his sessions. *See* No. 16-0593V, 2019 WL 5849524, at *5 (Fed. Cl. Spec. Mstr. Aug. 28, 2019)

Although Section 13(a) precludes me from finding in favor of a petitioner based on the petitioner's claims alone, that "in no way precludes me from finding in favor of a petitioner based on a petitioner's testimony that is supported by other record evidence." *Cummings v. Sec'y of Health & Hum. Servs.*, No. 20-1358V, 2022 WL 962520, at *4 (Fed. Cl. Spec. Mstr. Feb. 24, 2022). The records from Petitioner's initial treatment, in conjunction with her declaration, support a finding in her favor on severity, if barely. This matter presents a "close call," but in the Vaccine Program, "petitioners are accorded the benefit of close calls." *See Silvestri*, 2021 WL 4205313, at *4 (quoting *Roberts v. Sec'y of Health & Human Servs.*, No. 09-427V, 2013 WL 5314698, at *10 (Fed. Cl. Spec. Mstr. Aug. 29, 2013)).

Despite this favorable severity requirement finding, however, Petitioner should not expect any damages that she receives to account for treatment that she received long after the late spring of 2021. In making this ruling on entitlement, I do not find it necessary to link Petitioner's condition in February 2021 with her report to Dr. Weissfeld on January 11, 2023.[9] I agree with Respondent that the January 11, 2023 visit to Dr. Weissfeld is entitled to little weight. *See* Resp't Opp'n at 2. Although this record was not as blatantly created for litigation as in the cases cited by Respondent, it is significant that Petitioner returned to Dr. Weissfeld only after Respondent raised concerns about severity at the initial status conference. *See id.* at 2-3 (citing *Black v. Sec'y of Health & Hum. Servs.*, No. 21-09V, 2023 WL 4446500, at *4 (Fed. Cl. Spec. Mstr. May 22, 2023); *Goodgame v. Sec'y of Health & Hum. Servs.*, 157 Fed. Cl. 62, 71 (2021); *Rastetter v. Sec'y of Health & Hum. Servs.*, No. 19-1840V, 2023 WL 5552317, at *10 (Fed. Cl. Spec. Mstr. Aug. 3, 2023)).

Further, the January 11, 2023 appointment with Dr. Weissfeld occurred after *many* appointments with other treaters that are completely silent as to Petitioner's shoulder. There is no evidence in the record to support Petitioner's post-hoc arguments that she was unable to obtain treatment for her shoulder due to her hip surgery, chose to prioritize her other health conditions over her shoulder, or made complaints about her shoulder that her treaters repeatedly did not record. *See* Pet'r Mot. at 9, 12-13; Pet'r Reply at 2. Petitioner's argument that her shoulder issues continued to be listed as "active" in her medical chart and so she must have reported ongoing concerns is also not persuasive.

---

[9] I do not rely on the January 11, 2023 visit with Dr. Weissfeld for this ruling and so the cases cited by the parties in their briefs addressing when the residual effects of an injury continue through long treatment gaps are not on point. Additionally, these cases are factually distinct. Respondent compares this case to *Adkins*. *See* Rule 4(c) Report at 7-8 (citing No. 20-813V, 2022 WL 1134998 (Fed. Cl. Mar. 24, 2022)). In *Adkins*, the petitioner briefly sought treatment a week after vaccination and then did nothing else related to her shoulder for 17 months, despite having visits with numerous doctors in the interim. *See* 2022 WL 1134998, at *2-*4. Those facts are dissimilar from the circumstances here. However, the cases relied upon by Petitioner, *Fey* and *Lamine*, are also inapposite because they dealt with much shorter gaps in treatment of only six to seven months. *See* No. 20-1832V, 2023 WL 5606239 (Fed. Cl. Spec. Mstr. July 26, 2023); 20-1560V, 2023 WL 4881504 (Fed. Cl. Spec. Mstr. June 20, 2023).

*See* Pet'r Mot. at 5-6, 13; Pet'r Reply at 4. The date that these conditions are noted as "last reviewed" (October 25, 2021) does not match any of Petitioner's appointments, and thus it is unclear how the "active" designation continued and why. *See* Ex. 4 at 20-21, 123-124, 181-182.

Petitioner's arguments that she continued to experience symptoms beyond what is recorded in her declaration and medical records are not corroborated. And too much time passed with no efforts to treat her shoulder (while actively pursuing other treatment) to support the conclusion that Petitioner's renewed treatments in 2023 and beyond were likely connected to her November 2020 vaccine injury. What is left is a mild SIRVA that was treated conservatively – and hence a claim that will not result in significant damages.

## Conclusion

Respondent does not raise any other objections to entitlement. *See generally* Rule 4(c) Report. Based on my independent review, I find that Petitioner has preponderantly established all requirements for a Table SIRVA claim. 42 C.F.R. § 100.3(c)(10). Accordingly, she need not prove causation-in-fact. Section 11(c)(1)(C). I also find that Petitioner has satisfied all other statutory requirements. Section 11(c)(A), (B), and (D).

For the foregoing reasons, **I find that Petitioner has established entitlement and is thus entitled to compensation for a right-sided Table SIRVA following her November 18, 2020 flu vaccine administration.**

The case is now formally in the damages phase. The parties are encouraged to pursue informal resolution of an appropriate damages award. If the parties determine that informal resolution is not possible, they should be prepared to promptly brief the appropriate award of damages.

**By no later than Tuesday, August 26, 2025**, Petitioner shall file a Status Report updating on the parties' efforts towards informally resolving damages.

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master